## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA AND | ) |
| | ) |
| THE STATES OF MARYLAND AND VIRGINIA | ) |
| AND THE DISTRICT OF COLUMBIA, *ex. Rel*, | ) |
| KATHYA ANGEL | ) |
| 517 N. Armistead Street, Apt #201 | ) |
| Alexandria, VA 22312 | ) Civil Action No. 1:10-cv-02124 (HHK) |
| | ) |
| -and- | ) |
| | ) |
| ALEXIS NATAL | ) |
| 3520 Nexus Court | ) |
| Woodbridge, VA 22192 | ) |
| | ) **FIRST AMENDED** |
| Plaintiffs, | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| v. | ) **FEDERAL FALSE CLAIMS ACT** |
| | ) **31 U.S.C. 3729 *ET SEQ*. AND** |
| ALLIANCE REHABILITATION LLC | ) **STATE FALSE CLAIMS ACT** |
| 8316 Arlington Blvd. Ste. 400 | ) **FOR VIRGINIA, MARYLAND** |
| Fairfax, VA 22031 | ) **AND DISTRICT OF COLUMBIA** |
| | ) |
| a.k.a. | ) |
| | ) |
| ALLIANCE REHAB & PHYSICAL THERAPY | ) |
| | ) |
| a.k.a. | ) |
| | ) **FILED UNDER SEAL** |
| ALLIANCE REHABILITATION, LLC | ) |
| | ) |
| | ) |
| ACTIVE PHYSICAL | ) |
| THERAPY SERVICES, LLC | ) **JURY TRIAL DEMANDED** |
| 545 Main St., Ste. 117 | ) |
| Laurel, MD 20707 | ) |
| | ) |
| | ) |
| ACCESSIBLE PHYSICAL | ) |
| THERAPY SERVICES, LLC | ) |
| 8717 Greenbelt Rd Suite 101 | ) |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

Greenbelt, MD 20770                         )
                                            )
ADVANCED PT & REHAB, LLC                    )
2841 Hartland Rd., Ste. 403                 )
Falls Church, VA 22043                      )
                                            )
    a.k.a.                                  )
                                            )
NOVA PHYSICAL THERAPY SERVICE               )
                                            )
                                            )
ALLIANCE PHYSICAL THERAPY                   )
        SERVICES, LLC                       )
4700 Berwyn House Road                      )
College Park, MD 20740                      )
                                            )
                                            )
RAJ GUPTA                                   )
8717 Greenbelt Rd Suite 101                 )
Greenbelt, MD 20770                         )
                                            )
GEETA TREHAN                                )
8316 Arlington Blvd. Suite 400              )
Fairfax, VA 22031                           )
                                            )
STACY FITZPATRICK,                          )
545 Main St Suite 117                       )
Laurel, MD 20707                            )
                                            )
-and-                                       )
                                            )
THOMAS BRAY                                 )
3 Washington Cir NW                         )
Washington, DC 20037                        )
                                            )
        Defendants                          )
                                            )
_____ )

The United States of America *ex rel* Kathya Angel and Alexis Natal, on behalf of the United

States, states as follows:

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

## INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and on behalf of the State of Virginia, the State of Maryland, and the District of Columbia under their respective state False Claims Acts, for false claims that Defendants presented to Medicare, a federal healthcare program, as defined in§ 42 U.S.C. § 1320a-7b(f).  Kathya Angel ("Angel") and Alexis Natal ("Natal") also seek damages under the common law for wrongful termination of employment in violation of public policy.

2. This action arises out of false claims for fraudulent billing practices performed by Defendant Alliance Rehabilitation, LLC ("Alliance") and its affiliated entities.

3. Since at least 2008[1], Alliance management-level employees developed a scheme to increase Alliance's revenue from Medicare by:

- Improperly billing for work performed by unlicensed physical therapists as if Medicare licensed physical therapists had performed the work; and

- Improperly submitting bills containing the unique Medicare provider identification numbers of physical therapists for services provided by physical therapist assistants and other unqualified personnel.

4. Alliance also engaged in the practice of "upcoding" or misrepresenting the services provided in order to obtain Medicare payment.

5. In short, Defendants made numerous false claims on documents submitted to Medicare seeking payments based on, or reimbursement for services that were never completed or were

---

[1] Relator Angel Kathya started working with Alliance in January 2008 and thus, has no knowledge of Alliance's billing practices prior to 2008.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

completed by unqualified personnel, including physical therapist assistants and physical therapists that lacked the appropriate Medicare credentials.

6. In furtherance of the false claims, management instructed Angel and other employees in the billing department o use the name and provider identification number for at least three Medicare licensed physical therapists who no longer worked for Alliance.  Management also instructed Natal to double-book patients despite the fact that her clinic had only two licensed physical therapists.  Angel and Natal both refused to engage in these fraudulent practices, complained about the practices to their respective supervisors, and were subsequently discharged in retaliation for refusing to participate in Defendant's schemes to defraud the government.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732. Angel and Natal's federal causes of action for retaliatory discharge are authorized by the False Claims Act, 31 U.S.C § 3730(h).

8. Venue is proper in this Court under 28 U.S.C § 1391(c) because Defendant maintains an office within this judicial district, transacts business within this judicial district, and committed false and fraudulent acts complained of within this judicial district.

## PARTIES

9. Angel and Natal (collectively "Realtors" or "Plaintiffs") are citizens of the United States and residents of Alexandria, Virginia and Woodbridge, Virginia respectively.  Relators bring this action for violations of the federal False Claims Act on behalf of themselves and the United States Government and the sovereign governments of the named states pursuant to 31 U.S.C. § 3729, *et seq.*, and comparable provisions of state FCAs.  Angel was employed with Defendant Alliance Rehabilitation LLC as a Medical Biller and thus has direct knowledge of the false

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

claims that the Defendants submitted to the federal government. Similarly, Natal was employed

by Defendant Alliance Rehabilitation LLC as a Front Desk Medical Assistant and thus has direct

knowledge of Defendant's fraudulent billing practices. Relators meet the definition of an

original source, as that term is defined under 31 U.S.C § 3730(e)(4)(B). Specifically, Realtors

voluntarily disclosed to the government the information that forms the basis of this Complaint

prior to any public disclosure under 31 U.S.C. §§ 3730(e)(4)(A).

10.   Defendant Alliance Rehabilitation LLC is a Maryland limited liability corporation with

its principal place of business in Virginia.

11.   Defendant Active Physical Therapy Services, LLC is a Maryland limited liability

corporation and shares a principal place of business with Defendant Alliance Rehabilitation

LLC.

12.   Defendant Accessible Physical Therapy Services, LLC is a Maryland limited liability

corporation whose CEO is the resident agent of Defendant Active Physical Therapy Service,

LLC.

13.   Defendant Advanced Physical Therapy Services, LLC is a Virginia limited liability

corporation shares management with Defendant Alliance Rehabilitation LLC

14.   Defendant Alliance Physical Therapy Services, LLC is a Maryland limited liability

corporation whose resident agent is the resident agent and part of management of Defendant

Alliance Rehabilitation LLC.

15.   To Relators' knowledge, the five corporate Defendants (collectively "Defendants")

operate as a single enterprise, sharing various corporate elements including but not limited to

management, office spaces, telephone numbers, addresses and staff.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

16.   To Relators' knowledge, Defendants operate at least seventeen (17) physical therapy centers throughout the states of Maryland and Virginia, and the District of Columbia.[2]

17.   To Relators' knowledge, Defendants operate under at least three federal tax identification numbers and various unofficial trade names, including: Alliance Rehab & Physical Therapy, Alliance Rehabilitation, LLC and Nova Physical Therapy Service.

18.   Approximately thirty-five (35) percent of Defendants' patents are Medicare patients.

19.   Defendant Raj Gupta owns and operates Alliance and is a resident of Odenton, Maryland.

20.   Defendant Geeta Trehan is an authorized representative and registered agent for one of Alliance's clinics.  Defendant Trehan was also Angel's supervisor during all relevant times to this Complaint.  Defendant Trehan is a resident of Vienna, Virginia.

21.   Defendant Stacy Fitzpatrick is a billing processor who willingly participated in the fraudulent billing practices alleged in this Complaint.

22.   Defendant Thomas Bray is an authorized representative in a Medicare registry, and is a registered agent for two of Alliance's clinics in Maryland.  Defendant Bray is a resident of Severn, Maryland.

---

[2] Operating as Alliance: 4660 Kenmore Ave., Ste. 420, Alexandria, VA 22304; 2616 Sherwood Hall Lane, Ste. 300, Alexandria, VA 22306; 8316 Arlington Blvd., Ste. 400, Fairfax, VA 22031; 5501 Blacklick Road, Ste. 118, Springfield, VA 22151; 8206 Leesburg Pike, Ste. 407, Vienna, VA 22102; 13854 Smoketown Road, Woodbridge, VA 22192; 3 Washington Circle NW, Ste. 300, Washington D.C. 20036.  Operating as Advanced P.T.: 504 Elden St. #2, Herndon, VA 20170; 2841 Hartland Road #403, Falls Church VA 22043; 6020 Richmond Highway, #100, Alexandria, VA 22303.  Operating at NOVA Physical Therapy: 8316 Arlington Blvd. #400, Fairfax, VA 22031.  Operating as Accessible Physical Therapy Services, LLC: 8717 Greenbelt Road, #101, Greenbelt, MD 20770; 2 Post Office Road, Ste. 4-A, Waldorf, MD 20602; 10301 Georgia Ave. Ste. 303, Silver Spring, MD 20906.  Operating as Active Physical Therapy Services, LLC: 9131 Piscataway Road, Clinton, MD; 555 Main St., Laurel MD; 604 Solarex Court, #104, Frederick, MD.  Operating as Alliance Physical Therapy Services, LLC: 4700 Berwyn House Road, College Park, MD 20740.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

# BACKGROUND

**A. False Claims Act**

23.   The FCA provides, in pertinent part:

(a) Any person who: (1) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim; (3) conspires to commit [an FCA] violation…

***

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000…plus 3 times the amount of damages which the Government sustains because of the act of that person.

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information; and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

31 U.S.C. § 3730(h) provides:

(1) Any employee, contractor, or agency shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent associated others in furtherance of efforts to stop one or more violations of this subchapter.

(2) Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.  An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

24.   Based on these provisions, Relators seek to recover damages and civil penalties arising from false claims that Defendants submitted to the government for payment through Medicare.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

**B.  The Medicare Program**

25.  In 1965, Congress enacted Title XVIII of the Social Security Act ("Medicare") to pay for the cost of certain medical services, including outpatient physical therapy services, for persons aged 65 and older, and for persons with disabilities. *See* 42 U.S.C. § 1395k(a)(2)(C).

26.  Critical to the continued solvency and viability of the Medicare program is that healthcare providers bill only for services that are actually performed.

27.  The Department of Health and Human Services ("HHS") is responsible for the funding administration and supervision of the Medicare program.  The Center for Medicare Services ("CMS") is the division of HHS that is directly responsible for the administration of Medicare. Medicare Part A, which is not at issue here, provides hospital insurance benefits to the elderly and disabled. *See* 42 U.S.C. § 1395c *et seq*.  Medicare Part B is a federally subsidized, voluntary insurance program that pays a portion of the cost of certain medical and other health services not covered by the Part A program, including some physical therapy services.  Reimbursement for Medicare clams is made by the United States through CMS.  CMS, in turn, contracts with private insurance companies to receive, review and pay appropriate claims for outpatient physical therapy services from the Medicare Trust Fund. *See* 42 U.S.C. § 1395h and 42 U.S.C. § 1395u. In this capacity, the insurance carriers act as fiscal intermediaries on behalf of CMS.

28.  To participate in the Medicare program, a healthcare provider must enter into a contract with CMS in which the provider agrees to conform to all applicable statutory and regulatory provisions relating to Medicare payments and reimbursements. *See* 42 U.S.C. § 1395cc.  For example, healthcare providers participating in the Medicare program must:

  (a) Refrain from making false statements or misrepresentations of material facts concerning payment requests;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

(b) Not bill for any services or products that were not performed or delivered in accordance with all applicable policies

(c) Be fully licensed and/or certified under all applicable state and federal laws to perform the services provided to the recipients.

(d) Comply with the applicable state and federal statutes, policies and regulations;

(e) Not engage in any illegal activities related to the furnishing of services or products to recipients;

(f) Must accept the "allowable charge" as determined by Medicare as full payment for covered services.

See 42 U.S.C. § 1395, et seq.

29.   At all times relevant to the Complaint, Defendants were participating Medicare providers.  Thus, at all times material to this Complaint, Alliance was required to obey all federal and state laws and regulations governing Medicare providers, including the federal False Claims Act 31 U.S.C. §§ 3279-3732, and comparable state FCAs for Virginia, Maryland and the District of Columbia which prohibit:

- False statements and certifications when applying for any benefit or payment under Medicare laws; and,

- Presenting or causing to be presented any false or fraudulent claims under Medicare. See 42 C.F.R. § 422.504(h)(1).

**C. Medicare Reimbursement for Physical Therapy Services**

30.   Medicare pays for physical therapy services under Part B when the services are rendered by a physician, by a qualified employee of a physician or physician-directed clinic or by a qualified physical therapist in independent practice.  42 C.F.R. § 410.60(c)(1)(ii).

31.   Healthcare providers, including physical therapists, are reimbursed under Medicare only if the healthcare provider assures that:

- No claim for an item or service is based upon a code that will provide greater payment than the code which is applicable to the item or service actually provided; and,

- Claims submitted for reimbursement do not make false statements or misrepresentations of material facts.

32.   In addition to the limitations named above, Medicare pays only for outpatient physical therapy provided by qualified personnel.  42 U.S.C. § 1395x(p); 42 C.F.R. § 485.713.  Personnel qualified to provide outpatient physical therapy services include licensed physical therapists and licensed physical therapy assistants who act under the supervision of a licensed physical therapist.  42 C.F.R. § 484.4; 42 C.F.R. § 485.54(b); 42 C.F.R. § 485.713(c).

33.   In order to bill Medicare for covered physical therapy services, only a licensed physical therapist who applied for and was assigned a unique Medicare provider identification number, or a licensed physical therapist supervised by a physical therapist assigned a unique Medicare provider number can perform the therapy.

34.   A healthcare provider must also certify that it is in compliance with applicable federal and state statutes, rules and regulations.  Indeed, CMS conditions payment upon the services being personally provided by, or in some instances, supervised by, the licensed professional who has applied for and received a provider identification number.  Medicare regulations expressly provide that all claims for services of providers or suppliers must be signed by the provider or supplier, which in turn certifies that the invoices are in compliance with Medicare laws.  42 C.F.R. § 424.33(b).  A knowing failure to comply with such authority renders a claim false where the provider has certified compliance with the applicable authority, even if the provider rendered the service for which it seeks reimbursement.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

35.   Accordingly, Medicare does not pay for physical therapy services performed by unlicensed physical therapists or for work performed by physical therapist assistants independent of the supervision of a licensed physical therapist.

36.   At all times relevant to this complaint, Defendants were aware of the above listed statutory requirements for claims submitted to Medicare for payment of physical therapy services.

37.   Despite Defendants' knowledge of these statutory requirements, Defendants routinely and knowingly submitted claims to Medicare Part B for payment that violated one or more of these statutory requirements.  For example, Defendants submitted claims that:

- Intentionally contained the wrong billing code to obtain Medicare payment;

- Intentionally contained the names and unique provider identification numbers of licensed physical therapists that were no longer employed by Alliance to receive payment for services completed by unlicensed physical therapists;

- Sought reimbursement for covered services when in fact group sessions had been provided—a service that Medicare does not cover; and,

- Sought payment from patients' insurance providers without the patients' signatures in violation of CMS rules and regulations for which Alliance is bound as a recipient of Medicare funds.

38.   Defendants' unlawful practices have been ongoing since at least 2008.

## D. Defendants' Process for Billing

39.   The process by which an entity bills Medicare varies.  A Medical Biller for Defendants places a charge into the computer billing system after receiving a patient's chart and accompanying Subjective Objective Assessment Plan ("SOAP") notes for completed physical therapy services and procedures.  Once a Medical Biller enters a charge into the computer billing system for a certain procedure, it is presumed that the procedure was performed and an electronic

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

bill is generated.  Medical Billers then shred all SOAP notes according to Defendants' billing procedures.

40.   Once Medicare receives the bills from Defendants, who are authorized to bill the government under this program, Medicare pays the amount owed out of the Federal Hospital Insurance Trust Fund to Alliance.  *See* 42 U.S.C. 1395g.  Depending on the billing procedures of the organization, some providers submit their Medicare claims directly to the government, others use a billing service or clearinghouse to collect payment from the government.  *See* Centers for Medicare & Medicaid Services, Medicare, Electronic Billing & EDI Transactions, Overview, *available at* http://www.cms.hhs.gov/ElectronicBillingEDITrans/.

41.   During the period from 2008 to the present, it was Defendants' regular practice to submit Medicare claims directly to the government, using the electronic billing system www.gatewaydi.com.

## FACTUAL ALLEGATIONS

**A.  Defendants' Fraudulent Billing Practices and Angel and Natal's Reports and Refusal to Participate**

  **1)  *Defendants Used Provider Identification Numbers of Licensed Physical Therapists to Bill Medicare for Services Performed by Unqualified Personnel***

42.   In January, 2008, Angel answered a job posting on craigslist.org for a job in the billing department of Nova Physical Therapy.  Geeta Trehan ("Trehan"), calling from Nova Physical Therapy asked Angel to interview for the position.

43.   When Angel arrived for the interview in Merrifield, Virginia, she found herself at Alliance Rehab and Physical Therapy.

44. Defendants hired Angel as a medical biller for the Active Physical Therapy, LLC clinic in Laurel, MD. Though Angel managed the billing for Active Physical Therapy, she was paid by Alliance Rehabilitation LLC.

45. On or about March or April 2008, an Active Physical Therapy center opened in Clinton, Maryland. A clinic in Hollywood, Maryland was open prior to Angel's start date at Alliance. There were two persons who managed the billing for the Hollywood, Maryland clinic prior to Angel—Kathy Melendez and Issac (last name unknown). Issac also managed the billing for an Alliance Rehab & Physical Therapy clinic in Woodbridge, Virginia. Angel eventually managed the billing for the Clinton and Hollywood centers as well as that of the Laurel, MD clinic.

46. Angel worked out of an Alliance Rehabilitation LLC clinic in Merrifield, Virginia. She shared an office space with individuals who billed for Active Physical Therapy, Nova Physical Therapy & Alliance Rehab and Physical Therapy. That operation moved to the Alliance Rehab & Physical Therapy office in Fairfax, Virginia.

47. Soon after Angel started, her supervisor Trehan instructed her to engage in fraudulent billing practices.

48. Some of Defendants' physical therapists were credentialed through Medicare, but some were not. Physical therapists credentialed by Medicare have a Medicare provider identification number. When an un-credentialed physical therapist, such as Eileen Gilmore ("Gilmore") would perform services, Trehan would instruct Angel to bill the service as if a credentialed physical therapist had performed the work. Gilmore complained about these practices and Defendants terminated her shortly thereafter.

49. Former coworker Lori Leary ("Leary") had similar concerns about Defendants' billing practices and stated that she had "worked in the medical industry for 20 years and had never seen

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

billing practices like she did at Alliance." Leary states that Trehan would instruct Leary to use her (Trehan's) Medicare credentials for billing although Trehan never saw a patient during the entire period Leary worked for Defendants. Leary worked for Defendants for approximately seven months from April 2008 to November 2008, until Defendants terminated her employment in late 2008. After Defendants terminated her, Leary told Raj Gupta ("Gupta") that his billing practices "were not right." Gupta thanked her, "but did not seem concerned."

50. On or about October 27, 2008, while billing for the Clinton clinic, Angel learned that the clinic had a backlog of approximately $150,000 and $92,000 in accounts receivable for Blue Cross/Blue Shield and Medicare, respectively because the Clinton clinic continued to see Blue Cross/Blue Shield and Medicare patients even though none of its physical therapists had a provider identification number for Blue Cross/Blue Shield or Medicare. *See* October 27, 2008 Activity Summary by Insurance, attached as Exhibit A.

51. In 2008, Amanda Beal ("Beal") obtained a unique provider identification number through Blue Cross/Blue Shield. Trehan then directed Angel to bill Blue Cross/Blue Shield for Active Physical Therapy's entire Clinton and Hollywood backlog using Beal's unique provider identification number, regardless of the fact that Beal could not have performed these services because she worked only in the Laurel clinic.

52. Beal also provided physical therapy services to Medicare patients while she was employed by Defendants even though she did not have credentials through Medicare.

53. In late 2008 or early 2009, Defendants terminated Beal. Unaware of Beal's termination, Angel continued processing bills for reimbursement using Beal's name and provider identification number. At no point did Angel's supervisor, Trehan, correct Angel's mistaken belief that Beal was still employed by Defendants. Instead, Defendants continued to allow their

employees, including Angel, to submit false claims with the unique provider identification number of former employee Beal to government payors.

54.   After learning that Beal no longer worked for Defendants, Angel complained to Trehan about the unlawful practice of using Beal's name and provider identification number on the bills. Trehan disregarded Angel's complaints as to the unlawful nature of the billing practices and instructed Angel to continue billing services performed by un-credentialed employees under the unique provider identification number assigned to Beal, who was not an employee of Defendants at the time those services were performed or billed.   Trehan further instructed Angel to use Beal's name and provider number to bill for physical therapy services performed by Defendants' employees working in the Clinton clinic although Beal had never worked there.

55.   In March 2009, Defendants hired licensed physical therapist Senait Belay to replace Beal.  At the time, Ms. Belay did not have Medicare credentials and was in the process of getting credentialed by Medicare.  After hiring Belay, Trehan ordered Angel to "go back to every single Medicare patient who Beal had treated" and replace Beal's name with Belay's name.  Trehan ordered Angel to make these changes because she wanted Defendants to receive payment from Medicare for those Medicare patients that received physical therapy services.  These claims were false because Belay had not provided the services billed.

56.   In August 2009, Defendants terminated Belay's employment.  Despite the fact that Belay no longer worked for Defendants, Trehan directed Angel to continue billing the Laurel clinic's services using Belay's name and unique provider identification number.  Angel objected to using Belay's information because Belay no longer worked for Defendants.  Trehan, however, insisted that Angel continue this fraudulent billing practice for one to two months following Belay's termination.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

57. In August 2008, Defendants hired Jason Nunn, a licensed physical therapist, to work in the Clinton office.

58. Shortly after Nunn obtained a Medicare provider number, on or about March 2010, Defendants submitted false claims to Medicare by directing billing personnel to bill all modalities using physical therapist Nunn's name and Medicare provider identification number for the Laurel and Hollywood clinic even though Nunn worked only in the Clinton clinic. For example, on March 16, 2010, Defendants' Laurel clinic produced a bill for a total of $2,535.00, using Nunn's provider name and unique provider identification number even though Nunn did not work at the Laurel clinic. *See* Invoice Produced by Active Physical Therapy Services on March 16, 2010 for Patient John Doe, attached as Exhibit C. This unlawful practice continued at the Maryland clinics until at least July 2010, when Defendants terminated Angel's employment.

59. Similarly, the Woodbridge, Virginia facility billed under Samson Belai's ("Belai") provider name and unique provider identification number even when he was not in the office. For example, the Woodbridge clinic opened from 9:00 AM to 11:00 AM on Saturdays and Belai would not come into work until 10:30 AM, yet the Woodbridge facility billed for clients that were seen by unlicensed physical therapist aide Aleta Majarucon ("Majarucon") from 9:00 AM-10:30 AM under Belai's name.

### 2) *Defendants Knowingly Billed Medicare for Physical Therapy Services that were Not Performed*

60. In May 2010, Angel received a call from one of Defendants' Medicare patients contesting the services listed on her bill. In that call, the patient informed Angel that group therapy, which is code 97150, was listed on her bill but that she did not have group therapy.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

61.   Defendants also regularly billed Medicare for CPT code 97140, which covers manual therapy techniques, including but not limited to mobilization, manipulation, and manual traction, even when the patients never received such therapy.

62.   Natal observed that physical therapists at the Woodbridge, Virginia facility required patients to continue physical therapy for a year at the direction of a physical therapist at that clinic.  The average time for outpatient rehabilitation therapy, however, is four to six weeks.

**3)** ***Defendants Knowingly Billed Medicare for Physical Therapy Services Provided to Patients by Unqualified Individuals in Violation of Medicare Regulations***

63.   Natal also observed and experienced, first-hand, Defendants' fraudulent billing practices during the five months that she worked for Defendants.

64.   Natal began working for Defendants at their Fairfax clinic in or about April 2010.  She transferred to the Woodbridge clinic in or about June 2010.

65.   While in the employ of Defendants, Natal witnessed Defendants engage in its routine business protocol, which is to fill each clinical treatment hour with four to five patients for each of the four "therapists" that it had on staff—the Woodbridge clinic had only one physical therapist on staff, Renee Trombley ("Trombley").

66.   While Virginia remains silent as to the number of patients a physical therapist can treat per hour, neighboring jurisdictions such as Maryland provide that physical therapists shall provide "[p]hysical therapy services to not more than an average of three patients per clinical treatment per hour per calendar day, excluding group therapy."  Md. Code. Regs. 10.38.03.02(A)(2)(b).

67.   Due to Defendants' intentional overbooking of appointments, Trombley, the only physical therapist at the Woodbridge clinic often never saw patients receiving services from the

physical therapy assistants.  Consequently, many patients received physical therapy such as self-care/home management training (CPT Code 97535) exclusively from unsupervised physical therapy assistants or support staff, including physical therapy assistant Tracey Boros ("Boros") and unlicensed physical therapist Nora Shoji ("Shoji").  Boros and Shoji were therefore expected to make decisions, unsupervised and unchecked, regarding the intensity, frequency and duration of patient workouts.

68.   The practice described above was in direct violation of Va. Code Ann. § 54.1-3482 and Medicare Regulation, 42 C.F.R. § 485.713(c), which provides that physical therapy services must be, "provided by, or under the supervision of, a qualified physical therapist."

69.   Natal first reported Defendants' improper practices to her first supervisor Xiomara Moore ("Moore") in August 2010.  Natal later reported the fraudulent billing practices to her second supervisor Ryan Azia ("Azia") in or about September 2010.  Neither supervisor took action.

70.   Despite Defendants' failure to comply with federal and state regulations governing the practice of physical therapy as required by 42 C.F.R. § 410.60, Defendants still billed the services performed by physical therapy assistant to Medicare as if they had been completed by or under the supervision of Medicare-credentialed licensed physical therapists.  Defendants' practice of submitting claims for payments that falsely claim the Defendants have provided the services described in accordance with Medicare regulations constitutes a false certification, record or statement to get a claim paid or approved by the government, of which certification is a material condition of payment.

### 4) *Defendants Knowingly "Upcoded" or Misrepresented the Services Provided to Obtain Medicare Payment*

71.   In the beginning of 2009, Angel informed Trehan that she no longer wanted to work in billing because she suspected that Defendants' practices were illegal.  In response to Angel's refusal to assist Defendants in further unlawful billing practices, in early 2009, Defendants hired two new employees, Stacey Fitzpatrick ("Fitzpatrick") and Genevieve Patton ("Patton") to process the payment entries and unsigned patient forms.

72.   In April 2010, Fitzpatrick asked Angel to modify billing records to substitute a Medicare-covered therapy for services that Defendants' physical therapists performed but were not covered by Medicare.  Specifically, Fitzpatrick told Angel not to bill for Gait Training, CPT code 97116, and to add one or two more units for one-on-one therapy, which is CPT code 97110, even though such therapy was not performed.  Fitzpatrick knew that one-on-one therapy was more profitable than the actual services performed—gait training—because Medicare covered one-on-one training therapies but did not cover gait training.

73.   Fitzpatrick also told Angel to replace group therapy, CPT code 97150 with additional units of one-on-one therapy whenever patients had both group therapy and one-on-one therapy in a single visit.  According to Fitzpatrick, Medicare would not pay for bills where patients had one-on-one therapy and group therapy in a single visit.

74.   Modifying billing records to increase payments received from Medicare was a customary practice for Defendants.  Angel, however, refused to misclassify the services actually performed and told Fitzpatrick that the practice was unlawful.  Fitzpatrick replied that she would simply make the changes herself, and then complained to Trehan that Angel was being uncooperative.  Trehan then instructed Angel to modify the billing records consistent with

Fitzpatrick's instructions.  At Trehan's instructions, Angel modified the records, fearing that

Defendants would terminate her employment.  As a result of Trehan's instructions, Defendants'

Medicare reimbursement claims were intentionally and fraudulently coded using the one-on-one

therapy code, 97110, when the appropriate code was the gait training code 97116.  Defendants

continued this fraudulent practice from April 2010 forward.

75.   One-on-one therapeutic procedures and services are billed in 15 minute units.  Each 15

minute, one-on-one contact between the physical therapist and the patient constitutes one unit for

billing and payment purposes.  Thus, one unit of billing code 97110 is properly charged and

billed to Medicare programs for 15 minutes direct one-on-one contact, two units is proper for 30

minutes of one-on-one contact, and so forth.

76.   The billing codes are common knowledge within the physical therapy industry.

Additionally, by virtue of their participation in the Medicare program, Defendants are charged

with the knowledge of these billing codes.

77.   The use of one-on-one billing codes in bills that Defendants submitted to Medicare

materially misrepresented the nature of the services provided and as a result induced Medicare to

pay for extra units of one-on-one therapy when I fact only about a third of the one-on-one

services billed for had been provided, if at all.

78.   Natal also observed and was forced to participate in Defendants' fraudulent billing

practices during the five months that she worked for Defendants.  Natal kept double booking and

overbooking patients because she feared that she would lose her job.

79.   At the beginning of her employment at the Woodbridge, Virginia facility in or about

June 2010, Natal's supervisor, Moore, showed Natal the billing sheet and provided Natal

instructions on how to "upcode" the units of physical therapy for various patients so that the

clinic could receive more compensation from Medicare.

80.   During the June 2010—August 2010 period, Natal also observed several instances

where Moore received a billing sheet with conflicting information and rather than consult the

physical therapist who saw the patient, Moore would independently list physical therapy services

that she believed should have been performed though she had no basis for making such

determinations.

81.   It is well established that a coder that knowingly assigns codes that overstate the

services provided can be liable under the FCA for submitting false claims under the government.

*See, e.g., United States ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308 (W.D. Okla. 1998).

### 5) *Defendants Improperly Instructed Patients to Complete Exercises That Were Not in Patients' Best Interests*

82.   While Natal worked in the Woodbridge, Virginia clinic, she observed members of the

Woodbridge staff instructing patients to do exercises that were not in the patients' best interest

merely because doing so was more profitable for Defendants.   For example, on more than one

occasion, physical therapists at the Woodbridge, Virginia clinic ordered 65 and 80 year old

patients to ride bicycles for thirty minutes at a time, three to four times each week so that

Defendants could receive Medicare reimbursements for additional units of therapy.

83.   Even though many of the patients could bicycle for only eight minutes at a time,

Defendants still billed Medicare for two units of exercise under CPT Code 97110 for each eight-

minute interval on the bicycles.   Under Medicare, however, an eight-minute interval of bicycling

constitutes only one unit of exercise under CPT Code 97110.   To bill for two units of exercise

under CPT Code 97110, a patient must engage in a physical therapy exercise for at least twenty-two minutes.

**6)  *Defendants Improperly Waived Medicare Co-Payments and Deductibles***

84.  In mid-2009, Defendants opened another clinic in Frederick, Maryland.  To increase its clientele, this clinic routinely waived patients' responsibilities, including the patients' co-payments and deductibles.

85.  Medicare requires beneficiaries to make a 20% co-insurance payment for services covered by Medicare, and requires that providers make all efforts to collect co-payments from Medicare patients except for instances where the Medicare patient is facing financial hardship.

86.  Defendants' practice of waiving co-payments and deductibles is therefore in violation of the FCA because the Defendants misrepresented the actual charge for the service provided.  For example, when Defendants make claims that they charge $60 for a particular service (Defendants typically billed a patient for $60 to $400 per visit) but then waives the copayment, the actual charge for the service is $48, and Medicare should pay only 80% of $48 (or $38.40), rather than 80% of $60 (or $48).  Because of Defendants' misrepresentations, the Medicare program loses $9.60 for the service.

87.  Relator Natal also reports co-pays being reduced or waived by Trehan at the Fairfax facility.

**7)  *Summary of Defendants' False and Fraudulent Billing Practices***

88.  Exhibits A and B show the activity summary by insurance from January 2008 to October 2008 for Defendants' Clinton, Maryland and Laurel, Maryland clinics, respectively.  Both clinics operated under the name Active Physical Therapy Services, LLC.

89.   According to Exhibits A and B, Defendants performed 1,463 units of physical therapy for Medicare patients at the Clinton clinic and 2,913 units of physical therapy for Medicare patients at the Laurel clinic.

90.   However, as discussed above, prior to Belay joining Defendants in March 2008, no member of Defendants' Clinton or Laurel staff had a Medicare provider number.

91.   Further, Belay worked only at the Laurel facility and Defendants did not have a Medicare-credentialed physical therapist at the Clinton facility.

92.   Defendants, however, billed patients at the Laurel facility using Belay's provider name and unique provider identification number. *See* March 16, 2010 Invoice Produced by Active Physical Therapy Services, LLC for Services Performed on John Doe 2, attached as Exhibit D.

93.   Defendants therefore fraudulently billed for and Medicare paid for 2,913 units of physical therapy.

94.   Assuming that each unit was charged at Defendants' lowest fee of $60 per unit and Medicare paid 80% of each unit (or $48 per unit), Medicare suffered an estimated loss of $138,824.00[3] in false claims—claims that were knowingly false because those units/procedures were provided by unqualified personnel or physical therapists lacking the appropriate Medicare credentials and provider identification number.

_____

[3] To arrive at this figure, we looked at October 27, 2008 Activity Summary by Insurance, attached as Ex. B, which shows the activity summary by insurance from January 2008 to October 2008 for Alliance's Laurel, Maryland clinic. According to Exhibit B, Alliance's Laurel clinic performed 2,913 units of physical therapy for Medicare patients. These 2,913 units were improperly billed to Medicare because none of Alliance's staff at the Laurel clinic had Medicare credentials. Therefore, Alliance fraudulently billed for and Medicare paid for 2,913 units of physical therapy. Assuming that each unit was charged at Alliance's lowest fee of $60 per unit and Medicare paid eighty percent of each unit (or $48 per unit), Medicare suffered an estimated loss of $139,824.00 in false claims.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

95.   The breadth of Defendants' scheme is put into context when it is considered that the fraudulent reimbursement of $139,824.00 reflects only ten months of fraudulent billings for only one out of the approximately seventeen clinics that Defendants own and operate.

96.   These schemes were ongoing throughout the Defendants' clinics from at least January 2008 forward.  Assuming that all seventeen clinics engaged in the fraudulent billing practices described above, since January 2008 to the present (approximately thirty-four months), the calculated loss for Medicare is approximately $8,081,827.20.[4]

97.   Relator Angel was terminated in July 2010 because she refused to participate in, and raised concerns about Defendants' fraudulent billing practices.

98.   Relator Natal was terminated in September 2010 because she continues to raise concerns about Defendants' fraudulent billing schemes.

99.   At all times relevant to this Complaint, it was a violation of the federal law and the state laws of Virginia and the District of Columbia to submit, or cause to be submitted, a false or fraudulent claim for payment or approval by a government health program.

100.   At all times relevant to this Complaint, it was a violation of federal law and the state laws of Virginia, Maryland and the District of Columbia to make, use, or cause to be made or used, a false record or statement in order to obtain payment for a  false or fraudulent claim from a government health insurance program.

---

[4] To arrive to this figure, we determined the estimated loss at the Laurel clinic, assuming that the clinic continued billing Medicare for services provided contrary to Medicare regulations, i.e., provided by unlicensed physical therapist or therapists without Medicare credentials, by calculating the amount lost for 34 months based on the fact that Medicare lost at least $139,824.00 for a ten-month period.  Once we found that figure, $475,401.60—which is the approximate loss at the Clinton clinic only for 34 months, we multiplied that figure by 17 to account for the total number of clinics owned and operated by Alliance.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

## B. Defendants' Wrongful Termination of Angel

101.  Angel became increasingly aware of Defendants' efforts to silence her.  Trehan and other employees talked amongst themselves about how Angel complained of the "illegal procedures" and Angel as constantly singled out for refusing to participate in what she reasonably believed to be unlawful billing practices.  Consequently, Angel suffered considerable emotional and mental distress, anxiety and fear for her professional reputation and financial security.

102.  Angel feared that Defendants would terminate her employment because she refused to participate in the company's fraudulent schemes to defraud the government.  Indeed, former employee Leary was terminated in late 2008 after she voiced similar concerns about Defendants' billing practices.

103.  Despite her fears of termination, Angel continuously refused to engage in Defendants' unlawful billing practices.

104.  On or about July 20, 2010, Angel received a letter from Trehan in which Trehan informed Angel of Defendants' decision to "let [her] go."

105.  In the July 20, 2010 termination letter, Defendants cited "numerous verbal warnings about mistakes" in Angel's work and warnings that Angel purportedly received for "excessive cell phone use."  Angel, however, estimates that she spent approximately five minutes per day on personal phone calls, which was not unusual among Defendants' employees.  While Angel admits that she has made occasional mistakes on Medicare bills, which was not unusual among billing personnel, Angel alleges that she has never received a verbal or written warning about her performance from Trehan.  In fact, Angel received a raise a month earlier for handling the Laurel, Clinton, Frederick, Largo and Hollywood clinics.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

C.  **Defendants' Wrongful Termination of Natal**

106.  Natal became increasingly aware of Defendants' efforts to isolate her from the rest of the team because she remained vocal about Defendants' unlawful billing practices.  Even so, she continued to report to her supervisors Defendants' unlawful billing practices.

107.  On September 30, 2010, Natal received a call from her supervisor, Azia.  In that call Azia informed Natal that she was not a good fit or Defendants and that the relationship was not working out.

108.  Prior to being terminated, Natal never had any performance issues.  In fact, on July 14, 2010 only two months prior to her termination, Natal received a gift card from the head physical therapist, Dr. Ramirez, for her excellent work.

**COUNT I**
**Defendants Knowingly Presented False or Fraudulent Claim for Payment to the United States in Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**
**Against All Defendants**

109.  Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 108 above as though fully alleged herein.

110.  This is a claim for treble damages and forfeitures under the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq*., as amended.

111.  By virtue of the acts described above, Defendants knowingly presented or caused to be presented to an officer or employee of the United States Government false or fraudulent claims for payment or approval under the federally-funded Medicare program in violation of 31 U.S.C. § 3729(a)(1).

112.  The United States, unaware of the falsity of the claims and/or statements made by defendants and in reliance on the accuracy thereof, paid defendants for such false or fraudulent claims.

113.  By reasons of the acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(1), the United States has suffered actual damages, including the total amounts paid in response to all such fraudulent claims for payment.  In addition, the United States is entitled to recover civil money penalties, and other monetary relief as deemed appropriate.

**COUNT II**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(2)**
**Against All Defendants**

114.  Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 113 above as though fully alleged herein.

115.  As set forth above, in connection with the foregoing scheme, Defendants knowingly made, used or caused to be made or used, false billing records and statements to get false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C § 3729(a)(2), when Defendants submitted claims for Medicare payment that incorrectly represented that Medicare-licensed physical therapists provided services performed.

116.  The United States paid such false or fraudulent claims because of the acts of Defendants.

117.  By reason of the acts and conduct of Defendants in violation of 31 U.S.C § 3729(a)(2), the United States has suffered actual damages, including the total amounts paid in response to all such false or fraudulent claims for payment.  In addition, the United States is entitled to recover civil money penalties, and other monetary relief as deemed appropriate.

**COUNT III**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(3)**
**Against All Defendants**

118. Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 117 above as though fully alleged herein.

119. As set forth above, in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(3).

120. The United States paid such false or fraudulent claims because of the acts of Defendants.

121. By reason of the conspiratorial acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(3), the United States has suffered actual damages, including the total amounts paid in response to all such false or fraudulent claims for payment.  In addition, the United States is entitled to recover civil money penalties, and other monetary relief as deemed appropriate.

**COUNT IV**
**Violation of the Virginia Fraud Against Taxpayers Act**
**Va. Code Ann. § 8.01-216.3**
**Against All Defendants**

122. Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 121 above as though fully alleged herein.

123. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A) specifically provides, in part, that:

"Any person who:

(1) Knowingly presents, or cause to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth

(3) Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

(4) Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5) Authorizes to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or,

(7) Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the Commonwealth;

shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than

$11,000, plus three times the amount of damages sustained by the Commonwealth."

124.   Defendants knowingly presented or caused to be presented to the Virginia Medicare

program false or fraudulent records or statements and false or fraudulent claims for payment and

approval, claims which failed to disclose material violations of law, and/or concealed their

actions and to avoid or decrease an obligation to pay or transmit money to the state, and

conspired with others to do so, all in violation of Va. Code Ann. § 8.01-216.3(a).

125.   The Commonwealth of Virginia paid said claims and has sustained damages, to the

extent of its portion of Medicare losses from Medicare claims filed in Virginia, because of these

acts by the Defendants.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

<u>COUNT V</u>
**Violation of the District of Columbia Procurement Reform Amendment Act**
**D.C. Code § 2-308.14(a)**
**Against All Defendants**

126.  Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1

through 125 above as though fully alleged herein.

127.  The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14,

specifically provides in part:

"Any person who commits any of the following acts shall be liable to the District for 3 times the

amount of damages which the District sustains because of the act of that person.  A person who

commits any of the following acts shall also be liable to the District for the costs of a civil

penalty of not less than $5,000, and not more than $10,000, for each false claim for which the

person:

> (1) Knowingly presents, or causes to be presented, to an officer or employee of the
>     District a false claim for payment or approval;
>
> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement to
>     get a false claim paid or approved by the District;
>
> (3) Conspires to defraud the District by getting a false claim allowed or paid by the
>     District;
>
> (4) Has possession, custody, or control of public property or money used, or to be used,
>     by the District and knowingly delivers, or causes to be delivered, less property than
>     the amount for which the person receives a certificate or receipt;
>
> (5) Is authorized to make or deliver a document certifying receipt of property used, or to
>     be used, by the District and knowingly makes or delivers a document that falsely
>     represents the property used or to be used;
>
> (6) Knowingly buys, or receives as a pledge of an obligation or debt, public property
>     from any person who lawfully may not sell or pledge the property;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

(7) Knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District;

(8) Is a beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District; or,

(9) Is the beneficiary of an inadvertent payment or overpayment by the District of monies not due and knowingly fails to repay the inadvertent payment or overpayment to the District."

128.   Defendants knowingly presented or caused to be presented to the District of Columbia Medicare program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of D.C. Code § 2-308.14(a).

129.   The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicare losses from Medicare claims filed in the District of Columbia, because of these acts by the Defendants.

**COUNT VI**
**Violation of the Maryland False Health Claims Act of 2010**
**Md. General Law ch. 4 §§ 2-601, *et seq.***
**Against All Defendants**

130.   Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 129 as though fully alleged herein.

131. The Maryland False Claims Act, Md. General Law ch. 4 §§ 2-601, *et seq.*, through §2-602, specifically provides that:

"(A) A person may not:

(1) Knowingly present or caused to be presented a false or fraudulent claim for payment or approval;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

(2) Knowingly make, use or cause to be made or used a false record or statement material to a false or fraudulent claim;

(3) Conspire to commit a violation under this subtitle;

(4) Have possession, custody or control of money or other property used by or on behalf of the State under a State health plan or State health program and knowingly deliver or cause to be delivered to the State less than all of that money or other property;

(5) (i) Be authorized to make or deliver a receipt of money or other property used or to be used by the State under a State health plan or a State health program; and
(ii) Intending to defraud the State or Department, make or deliver a receipt or document knowing that the information contained in the receipt or document is not true;

(6) Knowingly buy or receive as a pledge of an obligation or debt publicly owned property from an officer, employee, or agent of a State health plan or a State health program who lawfully may not sell or pledge the property;

(7) Knowingly make, use or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or other property to the State;

(8) Knowingly conceal, or knowingly and improperly avoid or decrease, an obligation to pay or transmit money or other property to the State; or

(9) Knowingly make any other false or fraudulent claim against a State health plan or a State health program.

132.   Defendants knowingly presented or caused to be presented to the Maryland Medicare program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the Maryland False Health Claims Act of 2010.

133.  The State of Maryland paid said claims and has sustained damages, to the extent of its portion of Medicare losses from Medicare claims filed in Maryland, because of these acts by the Defendants.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

**COUNT VII**
**Violation of the False Claims Act**
**31 U.S.C. § 3730(h)**
**Against All Defendants**

134.  Angela and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 133 above as though fully alleged herein.

135.  As set forth above, in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States, in violation of the False Claims Act.

136.  Angel is an "employee" and Defendant Alliance is an "employer" as the terms are defined by the False Claims Act.

137.  Angel was discriminated against and ultimately discharged by Defendants as a result of her performing lawful acts to stop one or more violations of the False Claims Act, including reporting and refusing to participate in Defendant's fraudulent billing practices.  At all relevant times, Angel was engaging in activity protected by the False Claims Act.  Defendants, knowing that Angel was engaging in such activity, discriminated against her because of her protected activity.

138.  Defendants can offer no justification for discriminating against and ultimately discharging Angel.

139.  To redress the harms she has suffered as a result of the acts and conduct of Defendants in violation of 31 U.S.C. § 3730(h), Angel is entitled to damages including two times the amount of back pay, interest on back pay, and compensation for any special damages, including emotional distress, and any other damages available by law including litigation costs and reasonable attorneys' fees.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

## COUNT VIII
### Violation of the False Claims Act
### 31 U.S.C. § 3730(h)
### Against All Defendants

140. Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 139 as though fully alleged herein.

141. As set forth above, in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States, in violation of the False Claims Act.

142. Natal is an "employee" and Defendant Alliance is an "employer" as the terms are defined by the False Claims Act.

143. Natal was discriminated against and ultimately discharged by Defendants as a result of her performing lawful acts to stop one or more violations of the False Claims Act, including reporting and refusing to participate in Defendants' fraudulent billing practices. At all relevant times, Natal was engaging in activity protected by the False Claims Act. Defendants, knowing that Natal was engaging in such activity, discriminated against her because of her protected activity.

144. Defendants can offer no justification for discriminating against and ultimately discharging Angel.

145. To redress the harms she suffered as a result of the acts and conduct of Defendants in violation of 31 U.S.C. § 3730(h), Natal is entitled to damages including two times the amount of back pay, interest on back pay, and compensation for any special damages, including emotional distress, and any other damages available by law including litigation costs and reasonable attorneys' fees.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

## COUNT IX
### Wrongful Termination in Violation of Public Policy
### Common Law of the District of Columbia
### Against All Defendants

146.  Angel and Natal reallege and incorporate the allegations set forth in paragraphs 1 through 145 above as though fully alleged herein.

147.  As set forth above, in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States, in violation of the False Claims Act and common law.

148.  The District of Columbia has clear public policy against the commissions of acts which violate federal and state laws, and against conduct that discourages citizens from reporting such unlawful acts.

149.  As set forth above, Angel and Natal were discriminated against and ultimately discharged by Defendants because she complained about and refused to violate federal statutes associated with presenting false claims to the government, including 18 U.S.C. § 371 and 18 U.S.C. § 1001(a).

150.  Discouraging Angel and Natal and others from engaging in protected activity by refusing to commit and/or participate in wrongful acts and conduct in violation of the False Claims Act and common law would jeopardize the District of Columbia's clear public policy against the commission of unlawful acts.

151.  Defendants can offer no justification for discriminating against and discharging Angel and Natal.

152.  Defendant's termination of Angel and Natal for complaining and refusing to engage in unlawful conduct constitutes a wrongful discharge under the D.C. common law.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

153.  To redress the harms they have suffered as a result of their wrongful discharge by Defendants, Angel and Natal are entitled to damages under the common law including back pay, interest on front pay, and compensation for any special damage, including emotional distress, and any other damages available by law including litigation costs and reasonable attorneys' fees.

## PRAYERS FOR RELIEF

WHEREFORE, Relators Kathya Angel and Alexis Natal, acting on behalf of and in the name of the United States of America and the State Plaintiffs, and on their own behalf, demands and prays that judgment be entered as follows against the Defendants under the federal FCA Counts and under the supplemental state FCA Counts as follows:

(a) In favor of the United States against the Defendants for treble the amount of damages to Government Health Care Programs from the fraudulent billing for the physical therapy services at issue plus maximum civil penalties for each violation of the FCA;

(b) In favor of the Relators for the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorney fees and costs incurred by Relators;

(c) For all costs of the federal FCA civil action;

(d) In favor of the Relators and the United States for further relief as this Court deems to be just and equitable;

(e) In favor of the Relators and the named State Plaintiffs against Defendants in amount equal to three times the amount of damages that District of Columbia, Maryland, and Virginia have sustained, respectively, as a result of the Defendants' actions, as well as a civil penalty against the Defendants of a statutory maximum for each violation of each state's FCA;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*

(f) In favor of the Relators for the maximum amount as a relator's share allowed pursuant to each state Plaintiffs FCA;

(g) In favor of the Relators for all costs and expenses associated with the supplemental state claims, including attorney's fees and costs;

(h) In favor of the state Plaintiffs and the Relators for all such other relief as the Court deems just and proper;

(i) Such other relief that this Court deems just and appropriate.

Respectfully submitted,

R. Scott Oswald, D.C. Bar No. 458859
Jason Zuckerman, D.C. Bar No. 473649
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261 – 2810
(202) 261 – 2835 (facsimile)
soswald@employmentlawgroup.com
jzuckerman@employmentlawgroup.com
*Counsel for Plaintiffs-Relators*

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Angel and Natal hereby demand a jury trial.

# EXHIBIT A

*150K - Blues*
*92K - Medicare*

ACTIVE PHYSICAL THERAPY SERV

# Activity Summary by Insurance
## As of 10/27/2008

*Clinton's money*

| Insurance | Charges | Payments | Adjustments | Units | Net Effect | % of AR Total |
|---|---|---|---|---|---|---|
| No Insurance | 5,060.00 | -2,390.00 | 0.00 | 135 | 2,670.00 | 0.22% |
| AAA00 | 1,965.00 | -1,375.00 | -590.00 | 49 | 0.00 | 0.00% |
| ACE00 | 6,940.00 | -1,751.88 | -1,953.12 | 119 | 3,235.00 | 0.26% |
| ACE01 | 3,390.00 | -1,145.48 | -1,069.12 | 91 | 1,175.40 | 0.10% |
| ABT01 | 19,265.00 | -7,128.08 | -3,939.92 | 539 | 8,197.00 | 0.67% |
| ABT03 | 640.00 | -480.00 | 0.00 | 57 | 160.00 | 0.01% |
| ABT04 | 905.00 | -50.00 | -805.00 | 20 | 50.00 | 0.00% |
| AGE00 | 1,830.00 | -920.00 | 0.00 | 52 | 910.00 | 0.07% |
| AIO00 | 11,770.00 | -6,137.09 | -5,632.91 | 278 | 0.00 | 0.00% |
| AIG02 | 3,795.00 | 0.00 | 0.00 | 80 | 3,795.00 | 0.31% |
| AIG03 | 5,170.00 | 0.00 | 0.00 | 100 | 5,170.00 | 0.42% |
| AIG04 | 315.00 | -301.12 | 0.00 | 9 | 13.88 | 0.00% |
| ALL06 | 2,850.00 | -2,187.37 | -662.63 | 51 | 0.00 | 0.00% |
| ALL08 | 1,070.00 | -1,070.00 | 0.00 | 22 | 0.00 | 0.00% |
| ALL09 | 54,055.00 | -20,398.87 | -1,886.00 | 1110 | 31,770.13 | 2.60% |
| AME00 | 9,225.00 | 0.00 | 0.00 | 157 | 9,225.00 | 0.75% |
| AMT00 | 7,630.00 | -4,996.02 | -2,633.98 | 142 | 0.00 | 0.00% |
| ANT00 | 5,925.00 | 0.00 | 0.00 | 97 | 5,925.00 | 0.48% |
| ATT00 | 231,503.00 | -40,999.93 | -9,211.46 | 4507 | 181,291.61 | 14.83% |
| BLU00 | 160,285.00 | -31,187.86 | -75,408.31 | 4071 | 53,688.83 | 4.39% |
| BRE00 | 9,230.00 | -3,683.94 | -5,546.06 | 172 | 0.00 | 0.00% |
| BRO00 | 1,755.00 | -647.17 | -1,107.83 | 39 | 0.00 | 0.00% |
| BRO01 | 1,480.00 | 0.00 | 0.00 | 34 | 1,480.00 | 0.12% |
| BRO02 | 540.00 | -186.41 | -353.59 | 10 | 0.00 | 0.00% |
| BTE00 | 1,800.00 | -550.00 | -350.00 | 28 | 900.00 | 0.07% |
| BUN00 | 1,955.00 | -1,038.50 | -916.50 | 42 | 0.00 | 0.00% |
| CAL00 | 1,905.00 | 0.00 | 0.00 | 35 | 1,905.00 | 0.16% |
| CAM00 | 16,200.00 | -7,835.05 | -8,364.95 | 460 | 0.00 | 0.00% |
| CAM01 | 8,200.00 | 0.00 | 0.00 | 139 | 8,200.00 | 0.67% |
| CAM02 | 2,320.00 | 0.00 | 0.00 | 39 | 2,320.00 | 0.19% |
| CAR00 | 132,825.10 | -32,247.39 | -61,745.43 | 3481 | 38,832.28 | 3.18% |
| CAR01 | 73,235.00 | -4,414.82 | -7,758.76 | 1382 | 61,061.42 | 5.00% |
| CAR02 | 1,645.00 | -432.75 | -1,162.25 | 65 | 50.00 | 0.00% |
| CAR03 | 1,170.00 | -386.25 | -783.75 | 26 | 0.00 | 0.00% |
| CIG01 | 40,970.00 | -17,730.58 | -10,897.59 | 869 | 12,341.83 | 1.01% |
| CIG02 | 410.00 | -246.00 | -104.00 | 16 | 60.00 | 0.00% |
| CMI00 | 3,870.00 | 0.00 | 0.00 | 72 | 3,870.00 | 0.32% |
| CMI01 | 6,265.00 | 1,457.75 | -2,487.25 | 179 | 2,320.00 | 0.19% |
| COR01 | 4,835.00 | -320.22 | -474.78 | 83 | 4,040.00 | 0.33% |
| CRA01 | 5,180.00 | 0.00 | 0.00 | 99 | 5,180.00 | 0.42% |
| CRA02 | 16,315.00 | -5,607.75 | -6,845.83 | 354 | 3,861.42 | 0.32% |
| DBP00 | 18,255.00 | -5,210.52 | -3,419.48 | 424 | 9,625.00 | 0.79% |
| DOL00 | 16,005.00 | -10,406.29 | -4,565.80 | 542 | 1,032.91 | 0.08% |
| DON00 | 2,365.00 | -1,080.73 | -1,284.27 | 53 | 0.00 | 0.00% |
| ENC00 | 7,470.00 | -7,344.17 | -125.83 | 138 | 0.00 | 0.00% |
| ENC01 | 1,890.00 | -1,890.00 | 0.00 | 44 | 0.00 | 0.00% |
| ERI00 | 6,330.00 | -1,500.00 | 0.00 | 113 | 4,830.00 | 0.40% |
| ERI03 | 21,375.00 | -10,223.34 | -1,040.29 | 452 | 10,111.37 | 0.83% |
| FRA00 | 4,010.00 | -2,293.87 | -1,716.13 | 87 | 0.00 | 0.00% |
| GAB00 | 1,455.00 | -488.87 | -966.13 | 43 | 0.00 | 0.00% |
| GAL00 | 72,520.00 | -24,550.96 | -31,409.92 | 1862 | 16,559.12 | 1.35% |
| GAL02 | 7,200.00 | -1,980.00 | 0.00 | 134 | 5,220.00 | 0.43% |
| GAL03 | 15,580.00 | -5,699.69 | -9,533.19 | 407 | 347.12 | 0.03% |
| GAL04 | 7,570.00 | -3,457.57 | -4,112.43 | 225 | 0.00 | 0.00% |

This program is registered to
PHYSICAL THERAPY SERVICES, LLC

ACTIVE PHYSICALTHERAPY SERV

## Activity Summary by Insurance

As of 10/27/2008

| Insurance | Charges | Payments | Adjustments | Units | Net Effect | % of AR Total |
|---|---|---|---|---|---|---|
| GAL05 | 6,045.00 | -960.09 | -1,414.91 | 120 | 3,670.00 | 0.30% |
| GBI00 | 146,980.00 | -67,056.61 | -2,786.23 | 3251 | 77,137.16 | 6.31% |
| GOL00 | 9,660.00 | -4,849.35 | 0.00 | 250 | 4,810.65 | 0.39% |
| GRE01 | 14,680.00 | -7,026.21 | -4,016.13 | 308 | 3,637.66 | 0.30% |
| GUA01 | 2,020.00 | -1,136.74 | -883.26 | 49 | 0.00 | 0.00% |
| HAR04 | 41,228.00 | -13,230.50 | -6,239.20 | 809 | 21,758.30 | 1.78% |
| HAR05 | 6,870.00 | -6,870.00 | 0.00 | 130 | 0.00 | 0.00% |
| HAR06 | 3,990.00 | 0.00 | 0.00 | 72 | 3,990.00 | 0.33% |
| HAR07 | 12,885.00 | -6,488.21 | -6,396.79 | 328 | 0.00 | 0.00% |
| HAR08 | 2,935.00 | -1,435.44 | -1,499.56 | 57 | 0.00 | 0.00% |
| HAR09 | 2,635.00 | -1,450.00 | 0.00 | 57 | 1,185.00 | 0.10% |
| HUS00 | 900.00 | -399.36 | -500.64 | 16 | 0.00 | 0.00% |
| IWI00 | 135,835.00 | -39,291.13 | -58,530.54 | 2987 | 38,013.33 | 3.11% |
| IWI01 | 36,205.00 | -6,434.97 | -8,630.03 | 735 | 21,140.00 | 1.73% |
| IWIF | 73,650.00 | -21,597.28 | -32,612.72 | 1512 | 19,440.00 | 1.59% |
| LI000 | 5,010.00 | 0.00 | 0.00 | 96 | 5,010.00 | 0.41% |
| LIB00 | 10,960.00 | -3,303.02 | -3,996.98 | 248 | 3,660.00 | 0.30% |
| LIB02 | 19,690.00 | -8,489.40 | -9,883.48 | 388 | 1,317.12 | 0.11% |
| LIB03 | 27,280.00 | -11,126.78 | -9,738.73 | 789 | 6,414.49 | 0.52% |
| LIB05 | 8,630.00 | -2,371.44 | -2,912.88 | 201 | 3,345.68 | 0.27% |
| MAC00 | 5,375.00 | -949.74 | -1,160.26 | 131 | 3,265.00 | 0.27% |
| MAI01 | 46,170.00 | -18,350.22 | -2,669.78 | 949 | 25,150.00 | 2.06% |
| MAN01 | 6,585.00 | -2,617.51 | -3,967.49 | 139 | 0.00 | 0.00% |
| MCM01 | 17,810.00 | -6,769.27 | -11,040.73 | 343 | 0.00 | 0.00% |
| MED00 | 92,775.00 | -35.00 | 0.00 | 1463 | 92,740.00 | 7.59% |
| MET01 | 4,810.00 | -2,500.00 | 0.00 | 100 | 2,310.00 | 0.19% |
| MET02 | 4,960.00 | 0.00 | 0.00 | 91 | 4,960.00 | 0.41% |
| MET03 | 1,865.00 | -1,514.91 | 0.00 | 41 | 350.09 | 0.03% |
| MON00 | 1,590.00 | -1,390.00 | -200.00 | 46 | 0.00 | 0.00% |
| NAL00 | 9,170.00 | -3,459.08 | -4,686.92 | 220 | 1,024.00 | 0.08% |
| NAT01 | 37,415.00 | -20,476.87 | -1,447.00 | 763 | 15,491.13 | 1.27% |
| NAT07 | 880.00 | 0.00 | 0.00 | 15 | 880.00 | 0.07% |
| NAT08 | 6,110.00 | 0.00 | 0.00 | 117 | 6,110.00 | 0.50% |
| NAT09 | 12,795.00 | 0.00 | 0.00 | 227 | 12,795.00 | 1.05% |
| NAT10 | 305.00 | 0.00 | 0.00 | 7 | 305.00 | 0.02% |
| NCI00 | 2,140.00 | 0.00 | 0.00 | 45 | 2,140.00 | 0.18% |
| NCA00 | 1,410.00 | -334.83 | -1,009.77 | 34 | 65.40 | 0.01% |
| NCA01 | 15,260.00 | -808.91 | -2,236.79 | 280 | 12,214.30 | 1.00% |
| ONE00 | 4,655.00 | -3,282.57 | -1,089.60 | 124 | 282.83 | 0.02% |
| ONE01 | 3,900.00 | -2,190.01 | 0.00 | 109 | 1,709.99 | 0.14% |
| PAR00 | 7,925.00 | 0.00 | 0.00 | 146 | 7,925.00 | 0.65% |
| PAR01 | 3,890.00 | 0.00 | 0.00 | 79 | 3,890.00 | 0.32% |
| PEN01 | 1,155.00 | 0.00 | 0.00 | 25 | 1,155.00 | 0.09% |
| PMA00 | 12,425.00 | -5,004.43 | -7,420.57 | 230 | 0.00 | 0.00% |
| PRO00 | 2,230.00 | 0.00 | 0.00 | 45 | 2,230.00 | 0.18% |
| PRO04 | 34,720.00 | -11,816.60 | -1,975.00 | 706 | 20,928.40 | 1.71% |
| PRO05 | 2,950.00 | 0.00 | 0.00 | 48 | 2,950.00 | 0.24% |
| PRO06 | 620.00 | -612.00 | -8.00 | 15 | 0.00 | 0.00% |
| ROC00 | 33,915.00 | -9,326.45 | -11,718.55 | 700 | 12,870.00 | 1.05% |
| SAF00 | 6,760.00 | 0.00 | 0.00 | 118 | 6,760.00 | 0.55% |
| SCH00 | 36,795.00 | -16,069.00 | -20,726.00 | 677 | 0.00 | 0.00% |
| SCH01 | 159,275.00 | -53,174.74 | -70,898.93 | 3578 | 35,201.33 | 2.88% |
| SCI00 | 1,340.00 | 0.00 | 0.00 | 33 | 1,340.00 | 0.11% |
| SED00 | 89,870.00 | -26,097.13 | -38,537.87 | 1805 | 25,235.00 | 2.06% |

FROM : LANDMARK PHOTO    FAX NO. : 7035580207    Aug. 23 2010 11:42AM P6

ACTIVE PHYSICALTHERAPY SERV

# Activity Summary by Insurance
As of 10/27/2008

| Insurance | Charges | Payments | Adjustments | Units | Net Effect | % of AR Total |
|---|---|---|---|---|---|---|
| SED01 | 21,830.00 | -4,462.22 | -6,162.78 | 446 | 11,205.00 | 0.92% |
| SED03 | 14,765.00 | -1,084.39 | -1,530.61 | 270 | 12,150.00 | 0.99% |
| SED04 | 5,245.00 | 0.00 | 0.00 | 90 | 5,245.00 | 0.43% |
| SEL00 | 4,880.00 | 0.00 | 0.00 | 88 | 4,880.00 | 0.40% |
| SEM00 | 5,450.00 | 0.00 | 0.00 | 112 | 5,450.00 | 0.45% |
| SEN01 | 18,035.00 | -7,240.62 | -7,094.58 | 401 | 3,699.80 | 0.30% |
| SEN02 | 4,215.00 | 0.00 | 0.00 | 82 | 4,215.00 | 0.34% |
| SHA00 | 4,775.00 | -812.53 | -1,157.47 | 109 | 2,805.00 | 0.23% |
| SIS00 | 12,145.00 | -4,298.65 | -5,976.35 | 278 | 1,870.00 | 0.15% |
| SPE00 | 1,090.00 | -498.61 | -591.39 | 24 | 0.00 | 0.00% |
| SPE01 | 3,030.00 | 0.00 | 0.00 | 52 | 3,030.00 | 0.25% |
| STA02 | 75,620.00 | -51,787.99 | -1,239.20 | 1620 | 22,592.81 | 1.85% |
| STA03 | 2,870.00 | -1,074.70 | 0.00 | 61 | 1,795.30 | 0.15% |
| STA04 | 3,825.00 | 0.00 | 0.00 | 73 | 3,825.00 | 0.31% |
| STA05 | 19,535.00 | -6,449.13 | -1,690.00 | 406 | 11,395.87 | 0.93% |
| STA06 | 18,935.00 | -8,300.00 | 0.00 | 375 | 10,635.00 | 0.87% |
| TRA01 | 4,010.00 | -1,775.56 | -2,234.44 | 77 | 0.00 | 0.00% |
| TRA03 | 9,275.00 | -2,761.73 | -2,143.27 | 202 | 4,370.00 | 0.36% |
| TRA04 | 12,835.00 | -4,044.08 | -3,221.21 | 302 | 5,569.71 | 0.46% |
| TRA05 | 6,545.00 | -1,001.40 | 0.00 | 150 | 5,543.60 | 0.45% |
| TRA07 | 2,520.00 | -1,710.00 | 0.00 | 57 | 810.00 | 0.07% |
| TRA08 | 1,510.00 | 0.00 | 0.00 | 36 | 1,510.00 | 0.12% |
| TRA10 | 2,195.00 | 0.00 | 0.00 | 40 | 2,195.00 | 0.18% |
| TRI01 | 4,830.00 | 0.00 | 0.00 | 81 | 4,830.00 | 0.40% |
| UNI00 | 10,935.00 | -3,718.00 | -2,756.74 | 282 | 4,460.26 | 0.36% |
| UNI01 | 2,390.00 | -1,097.10 | 0.00 | 55 | 1,292.90 | 0.11% |
| UNI03 | 430.00 | -275.20 | 0.00 | 9 | 154.80 | 0.01% |
| UNI05 | 880.00 | -401.00 | -479.00 | 19 | 0.00 | 0.00% |
| UNI07 | 3,805.00 | -629.00 | 0.00 | 91 | 3,176.00 | 0.26% |
| UNI08 | 4,160.00 | 0.00 | 0.00 | 81 | 4,160.00 | 0.34% |
| UNI10 | 5,480.00 | 0.00 | 0.00 | 101 | 5,480.00 | 0.45% |
| UNI11 | 2,175.00 | 0.00 | 0.00 | 46 | 2,175.00 | 0.18% |
| USA00 | 12,125.00 | -10,157.47 | 0.00 | 271 | 1,967.53 | 0.16% |
| USA02 | 18,090.00 | -10,213.73 | -2,382.61 | 379 | 5,493.66 | 0.45% |
| USA03 | 8,680.00 | -1,133.80 | 0.00 | 163 | 7,546.20 | 0.62% |
| USA04 | 5,490.00 | -3,600.08 | 0.00 | 112 | 1,889.92 | 0.15% |
| USA06 | 3,245.00 | 0.00 | 0.00 | 64 | 3,245.00 | 0.27% |
| USA07 | 1,315.00 | -786.40 | 0.00 | 29 | 528.60 | 0.04% |
| VAN00 | 9,690.00 | 0.00 | 0.00 | 168 | 9,690.00 | 0.79% |
| WAU02 | 6,335.00 | 0.00 | 0.00 | 106 | 6,335.00 | 0.52% |
| ZUR04 | 27,200.00 | -3,805.07 | -6,644.93 | 516 | 16,750.00 | 1.37% |
| | $2,668,046.10 | -$798,843.55 | -$647,004.41 | 57810 | $1,222,198.14 | 100.00% |

This program is registered to
PHYSICAL THERAPY SERVICES, LLC

FROM : LANDMARK PHOTO                FAX NO. : 7035280207                Aug. 23 2010 11:42AM P7

# EXHIBIT B

# ACTIVE PHYSICALTHERAPY SERV
### 555 MAIN STREET, STE 117
### LAUREL, MD 20707
### (301)498-8322

Page: 1                                                                              3/16/2010

**Patient:**

**Instructions:**

Complete the patient information portion of your insurance claim form. Attach this bill, signed and dated, and all other bills pertaining to the claim. If you have a deductible policy, hold your claim forms until you have met your deductible. Mail directly to your insurance carrier.

Chart #:   ROBPA000
Case #:    1271

| Date | Description | Procedure | Modify | Dx 1 | Dx 2 | Dx 3 | Dx 4 | Units | Charge |
|------|-------------|-----------|--------|------|------|------|------|-------|--------|
| 7/14/2009 | P.T. Evaluation | 97001 | | 781.2 | | | | 1 | 200.00 |
| 7/16/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/16/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/21/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/21/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/21/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/23/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/23/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/23/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/28/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/28/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/28/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/30/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 2 | 120.00 |
| 7/30/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/30/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/4/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/4/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/4/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/6/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/6/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/6/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/11/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/11/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/13/2009 | P.T. Re-evaluation | 97002 | 59 | 781.2 | | | | 1 | 150.00 |
| 8/13/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 2 | 120.00 |
| 8/13/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/13/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |

**Provider Information**

Provider Name:   SENAIT BELAY PT
License:   22439

SSN or EIN:   260766278

| | |
|---|---|
| Total Charges: | $ 2765.00 |
| Total Payments: | -$ 863.41 |
| Total Adjustments: | -$ 1901.59 |
| Total Due This Visit: | $ 2765.00 |
| Total Account Balance: | -$ 220.00 |

Assign and Release:   I hereby authorize payment of medical benefits to this physician for the services described above. I also authorize the release of any information necessary to process this claim.

Patient Signature:                                                    Date:

ACTIVE PHYSICAL THERAPY SERV
# Activity Summary by Insurance
As of 10/27/2008

*90K Medicare*
*94K - Blues*

*Laurel's Money Not*

| Insurance | Charges | Payments | Adjustments | Units | Net Effect | % of AR Total |
|---|---|---|---|---|---|---|
| No insurance | 150.00 | -115.00 | 0.00 | 5 | 35.00 | 0.01% |
| AET01 | 33,710.00 | -5,091.93 | -17,719.57 | 709 | 10,898.50 | 1.94% |
| AET04 | 4,130.00 | -1,550.00 | -1,335.00 | 85 | 1,245.00 | 0.22% |
| AET09 | 18,240.00 | -3,015.01 | -10,399.99 | 361 | 4,825.00 | 0.86% |
| AGE00 | 4,455.00 | -1,663.57 | 0.00 | 78 | 2,791.43 | 0.50% |
| AIG00 | 30,540.00 | -13,149.48 | -13,070.52 | 689 | 4,320.00 | 0.77% |
| ALL00 | 860.00 | 0.00 | 0.00 | 20 | 860.00 | 0.15% |
| ALL01 | 6,075.00 | -3,350.00 | -1,805.00 | 126 | 920.00 | 0.16% |
| ALL03 | 7,555.00 | -510.00 | 0.00 | 141 | 7,045.00 | 1.25% |
| AME01 | 625.00 | -475.00 | 0.00 | 42 | 150.00 | 0.03% |
| AME02 | 7,120.00 | 0.00 | 0.00 | 131 | 7,120.00 | 1.27% |
| ATT00 | 53,000.00 | -5,628.75 | -1,400.00 | 1013 | 45,971.25 | 8.17% |
| BLU00 | 200.00 | 0.00 | 0.00 | 1 | 200.00 | 0.04% |
| CAR00 | 136,185.00 | -24,875.05 | -72,912.24 | 3001 | 38,397.71 | 6.83% |
| CAR02 | 43,370.00 | -1,557.66 | -3,377.34 | 732 | 38,435.00 | 6.83% |
| CAR03 | 7,145.00 | -330.00 | 0.00 | 113 | 6,815.00 | 1.21% |
| CAR04 | 3,500.00 | -804.50 | -1,825.50 | 96 | 870.00 | 0.15% |
| CAR05 | 13,225.00 | -850.00 | 0.00 | 229 | 12,375.00 | 2.20% |
| CAR07 | 2,540.00 | -484.14 | -520.86 | 66 | 1,535.00 | 0.27% |
| CIG00 | 44,595.00 | -18,170.45 | -19,420.15 | 1013 | 7,004.40 | 1.25% |
| CIN00 | 11,125.00 | -4,373.40 | -5,691.60 | 227 | 1,060.00 | 0.19% |
| CNA00 | 3,865.00 | -1,497.33 | -2,367.65 | 72 | 0.00 | 0.00% |
| CRA00 | 9,235.00 | -3,210.94 | -5,113.15 | 209 | 910.91 | 0.16% |
| DEF00 | 7,525.00 | -1,882.14 | -2,427.03 | 182 | 3,215.83 | 0.57% |
| ELO00 | 565.00 | 0.00 | 0.00 | 16 | 565.00 | 0.10% |
| ENC00 | 4,530.00 | -1,500.03 | 0.00 | 85 | 3,029.97 | 0.54% |
| ERI00 | 9,015.00 | -1,518.45 | -2,356.55 | 178 | 5,140.00 | 0.91% |
| ESI00 | 2,780.00 | -166.62 | -253.38 | 42 | 2,360.00 | 0.42% |
| FRE00 | 2,200.00 | -2,200.00 | 0.00 | 39 | 0.00 | 0.00% |
| GEH00 | 10,705.00 | -4,828.45 | -2,903.31 | 253 | 2,973.24 | 0.53% |
| GEI00 | 1,415.00 | -850.00 | 0.00 | 28 | 565.00 | 0.10% |
| GEI01 | 11,615.00 | -1,967.00 | -67.00 | 251 | 9,581.00 | 1.70% |
| GRE00 | 11,630.00 | -1,060.30 | -9,818.20 | 244 | 751.50 | 0.13% |
| HAR00 | 4,875.00 | -804.33 | -950.67 | 96 | 3,120.00 | 0.55% |
| HAR01 | 4,110.00 | -1,461.24 | -1,478.76 | 97 | 1,170.00 | 0.21% |
| IWI00 | 55,715.00 | -22,617.45 | -30,043.46 | 1439 | 3,054.09 | 0.54% |
| KPI00 | 6,326.64 | -3,097.45 | -1,570.00 | 149 | 1,659.19 | 0.29% |
| LIB01 | 2,840.00 | -1,070.71 | 0.00 | 57 | 1,769.29 | 0.31% |
| LOC00 | 1,660.00 | 0.00 | 0.00 | 30 | 1,660.00 | 0.30% |
| MAB00 | 1,935.00 | 0.00 | 0.00 | 37 | 1,935.00 | 0.34% |
| MAI02 | 1,980.00 | 0.00 | 0.00 | 38 | 1,980.00 | 0.35% |
| MAM00 | 19,420.00 | -2,258.84 | -8,006.76 | 467 | 9,154.40 | 1.63% |
| MAM01 | 7,990.00 | -50.00 | 0.00 | 134 | 7,940.00 | 1.41% |
| MAR01 | 14,255.00 | 0.00 | -595.00 | 239 | 13,660.00 | 2.43% |
| MD000 | 410.00 | 0.00 | 0.00 | 16 | 410.00 | 0.07% |
| MDI00 | 2,160.00 | -590.78 | -965.42 | 46 | 603.80 | 0.11% |
| MED01 | 190,470.00 | 0.00 | 0.00 | 2913 | 190,470.00 | 33.86% |
| NAT00 | 10,115.00 | -10,115.00 | 0.00 | 165 | 0.00 | 0.00% |
| NAT01 | 13,180.00 | -5,740.00 | 0.00 | 245 | 7,440.00 | 1.32% |
| NC000 | 895.00 | 0.00 | 0.00 | 15 | 895.00 | 0.16% |
| NCA00 | 7,665.00 | -1,797.14 | -4,629.79 | 157 | 1,238.07 | 0.22% |
| NGM00 | 4,655.00 | -3,193.03 | -1,752.17 | 135 | -290.20 | -0.05% |
| ONE00 | 1,270.00 | 0.00 | 0.00 | 23 | 1,270.00 | 0.23% |
| OPT00 | 15,500.00 | -3,672.58 | -11,177.42 | 343 | 650.00 | 0.12% |

ACTIVE PHYSICAL THERAPY SERV
# Activity Summary by Insurance
As of 10/27/2008

| Insurance | Charges | Payments | Adjustments | Units | Net Effect | % of AR Total |
|---|---|---|---|---|---|---|
| PEN00 | 3,510.00 | -1,020.00 | 0.00 | 86 | 2,490.00 | 0.44% |
| PMA01 | 6,740.00 | 0.00 | 0.00 | 110 | 6,740.00 | 1.20% |
| PRO00 | 930.00 | 0.00 | 0.00 | 25 | 930.00 | 0.17% |
| SAF00 | 1,760.00 | -725.88 | -994.12 | 51 | 40.00 | 0.01% |
| SCI00 | 1,540.00 | 0.00 | 0.00 | 25 | 1,540.00 | 0.27% |
| SED02 | 11,375.00 | -1,950.72 | -2,852.96 | 254 | 6,571.32 | 1.17% |
| SEL03 | 2,520.00 | -1,136.85 | -1,383.15 | 58 | 0.00 | 0.00% |
| SEL02 | 3,200.00 | -235.00 | -2,965.00 | 57 | 0.00 | 0.00% |
| SIS00 | 5,240.00 | -1,072.72 | -1,339.25 | 102 | 2,828.03 | 0.50% |
| ST001 | 1,400.00 | -604.61 | -795.39 | 32 | 0.00 | 0.00% |
| STA01 | 39,635.00 | -26,795.82 | -10.00 | 845 | 12,829.18 | 2.28% |
| STA02 | 6,845.00 | 0.00 | 0.00 | 113 | 6,845.00 | 1.22% |
| TIT00 | 4,285.00 | -2,055.00 | 0.00 | 93 | 2,230.00 | 0.40% |
| TRA00 | 5,825.00 | -2,675.34 | -3,149.66 | 122 | 0.00 | 0.00% |
| TRA04 | 4,090.00 | -1,755.15 | -2,184.85 | 78 | 150.00 | 0.03% |
| TRI00 | 19,400.00 | -919.63 | -2,285.83 | 386 | 16,194.54 | 2.88% |
| TRI02 | 860.00 | 0.00 | 0.00 | 12 | 860.00 | 0.15% |
| UNI01 | 9,035.00 | -779.14 | -650.86 | 189 | 7,605.00 | 1.35% |
| UNI03 | 4,605.00 | 0.00 | 0.00 | 83 | 4,605.00 | 0.82% |
| UNI04 | 1,870.00 | 0.00 | 0.00 | 38 | 1,870.00 | 0.33% |
| UNI05 | 305.00 | 0.00 | 0.00 | 11 | 305.00 | 0.05% |
| US000 | 585.00 | 0.00 | 0.00 | 15 | 585.00 | 0.10% |
| US001 | 1,470.00 | 0.00 | 0.00 | 22 | 1,470.00 | 0.26% |
| USA00 | 27,075.00 | -11,143.31 | -1,519.93 | 616 | 14,411.76 | 2.56% |
| WAU01 | 10,650.00 | -4,407.04 | -5,902.96 | 334 | 340.00 | 0.06% |
| ZUR00 | 7,810.00 | -4,132.94 | -4,284.23 | 215 | -607.17 | -0.11% |
| | $1,053,411.64 | -$224,552.92 | -$266,271.68 | 21290 | $562,587.04 | 100.00% |

FROM : LANDMARK PHOTO          FAX NO. : 7035580207          Aug. 23 2010 11:41AM  P4

# EXHIBIT C

# ACTIVE PHYSICAL THERAPY SERV

555 MAIN STREET, STE 117
LAUREL, MD 20707
(301)498-8322

Page: 2

3/16/2010

| Patient: | | **Instructions:** |
|---|---|---|
| | | Complete the patient information portion of your insurance claim form. Attach this bill, signed and dated, and all other bills pertaining to the claim. If you have a deductible policy, hold your claim forms until you have met your deductible. Mail directly to your insurance carrier. |

Chart #:  MCNDE000
Case #:  1357

| Date | Description | Procedure | Modify | Dx 1 | Dx 2 | Dx 3 | Dx 4 | Units | Charge |
|---|---|---|---|---|---|---|---|---|---|
| 10/7/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/8/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 3 | 180.00 |
| 10/8/2009 | Electrical Stimulation (each 15 min) | 97032 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/8/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/8/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/8/2009 | Manual therapy techn (each 15 min) | 97140 | | 726.2 | 726.0 | 726.1 | | 1 | 55.00 |
| 10/12/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 4 | 240.00 |
| 10/12/2009 | Electrical Stimulation (each 15 min) | 97032 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/12/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/12/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/13/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 4 | 240.00 |
| 10/13/2009 | Electrical Stimulation (each 15 min) | 97032 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/13/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/13/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/15/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 3 | 180.00 |
| 10/15/2009 | Electrical Stimulation (each 15 min) | 97032 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/15/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/15/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/15/2009 | Manual therapy techn (each 15 min) | 97140 | | 726.2 | 726.0 | 726.1 | | 1 | 55.00 |
| 10/19/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 4 | 240.00 |
| 10/19/2009 | Electrical Stimulation (each 15 min) | 97032 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/19/2009 | Hot Pack/Cold Pack (each 15 min) | 97010 | | 726.2 | 726.0 | 726.1 | | 1 | 40.00 |
| 10/19/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |
| 10/20/2009 | P.T. Re-evaluation | 97002 | 59 | 726.2 | 726.0 | 726.1 | | 1 | 150.00 |
| 10/20/2009 | Exercise Therapy (each 15 min) | 97110 | | 726.2 | 726.0 | 726.1 | | 4 | 240.00 |
| 10/20/2009 | Manual therapy techn (each 15 min) | 97140 | | 726.2 | 726.0 | 726.1 | | 1 | 55.00 |
| 10/20/2009 | Neuromuscular reeducation (each 15 | 97112 | | 726.2 | 726.0 | 726.1 | | 1 | 60.00 |

**Provider Information**

Provider Name:  JASON NUNN P.T.
License:  21596

SSN or EIN:  260766278

| | |
|---|---|
| Total Charges: | $ 2535.00 |
| Total Payments: | -$ 1399.29 |
| Total Adjustments: | -$ 1330.93 |
| **Total Due This Visit:** | **$ 2535.00** |
| Total Account Balance: | -$ 537.32 |

Assign and Release:   I hereby authorize payment of medical benefits to this physician for the services described above. I also authorize the release of any information necessary to process this claim.

Patient Signature: _____    Date: _____

# EXHIBIT D

# ACTIVE PHYSICAL THERAPY SERV
### 555 MAIN STREET, STE 117
### LAUREL, MD 20707
### (301)498-8322

Page: 1                                                                                  3/16/2010

| Patient: | | Instructions: |
|---|---|---|

Chart #:   ROBPA000
Case #:    1271

**Instructions:**
Complete the patient information portion of your insurance claim form. Attach this bill, signed and dated, and all other bills pertaining to the claim. If you have a deductible policy, hold your claim forms until you have met your deductible. Mail directly to your insurance carrier.

| Date | Description | Procedure | Modify | Dx 1 | Dx 2 | Dx 3 | Dx 4 | Units | Charge |
|---|---|---|---|---|---|---|---|---|---|
| 7/14/2009 | P.T. Evaluation | 97001 | | 781.2 | | | | 1 | 200.00 |
| 7/16/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/16/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/21/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/21/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/21/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/23/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/23/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/23/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/28/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 7/28/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/28/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 7/30/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 2 | 120.00 |
| 7/30/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 7/30/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/4/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/4/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/4/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/6/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/6/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/6/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/11/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 3 | 180.00 |
| 8/11/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |
| 8/13/2009 | P.T. Re-evaluation | 97002 | 59 | 781.2 | | | | 1 | 150.00 |
| 8/13/2009 | Exercise Therapy (each 15 min) | 97110 | | 781.2 | | | | 2 | 120.00 |
| 8/13/2009 | Electrical Stimulation (each 15 min) | 97032 | | 781.2 | | | | 1 | 60.00 |
| 8/13/2009 | Manual therapy techn (each 15 min) | 97140 | | 781.2 | | | | 1 | 55.00 |

**Provider Information**
Provider Name:   SENAIT BELAY PT
License:   22439

SSN or EIN:   260766278

| | |
|---|---|
| Total Charges: | $ 2765.00 |
| Total Payments: | -$ 863.41 |
| Total Adjustments: | -$ 1901.59 |
| Total Due This Visit: | $ 2765.00 |
| Total Account Balance: | -$ 220.00 |

Assign and Release:   I hereby authorize payment of medical benefits to this physician for the services described above. I also authorize the release of any information necessary to process this claim.

Patient Signature: _____          Date: _____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served via UPS, on this

2nd day of May 2011, upon:

Jennifer Short, Esq.
Assistant United States Attorney
United States Attorneys' Office
555 Fourth Street, N.W.
Washington, D.C. 20530
Phone:  202-307-6078

R. Scott Oswald, D.C. Bar No. 458859
Jason Zuckerman, D.C. Bar No. 473649
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261 – 2810
(202) 261 – 2835 (facsimile)
soswald@employmentlawgroup.com
jzuckerman@employmentlawgroup.com
*Counsel for Plaintiffs-Relators*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Angel et al. v. Alliance Rehabilitation, LLC*